**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **TIMOTHY HEADRICK, # B-87996,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-cv-1188-MJR** |
| | ) | |
| **S.A. GODINEZ, ALLEN E. MARTIN,** | ) | |
| **and OFFICER REED,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

This matter is before the Court for a merits review of Plaintiff's First Amended Complaint (Doc. 8) pursuant to 28 U.S.C. § 1915A.  Plaintiff originally filed this *pro se* civil rights action under 42 U.S.C. § 1983 on September 6, 2013, along with three other co-Plaintiffs. At that time, they were all convicted prisoners incarcerated at the Shawnee Correctional Center ("Shawnee").  Two of the original co-Plaintiffs remain in that action, which is pending under Case No. 13-cv-919-JPG in this Court.

On November 18, 2013, on Plaintiff's motion, his claims were severed into the present case (Doc. 1).  Since the filing of the original complaint, Plaintiff had been transferred away from his fellow litigants to another prison within the Illinois Department of Corrections ("IDOC").  Due to a successful appeal of his criminal conviction,[1] Plaintiff was then transferred again to the St. Clair County Jail, where he is now detained.

When he requested severance of his claims, Plaintiff also sought leave to amend

---

[1] *See Headrick v. Watson, et al.*, Case No. 13-cv-1302-JPG (S.D. Ill., filed Dec. 17, 2013, Doc. 1, p. 2). Court documents are, of course, public records of which the Court can take judicial notice. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

his complaint.  Leave was granted (Doc. 1), and Plaintiff filed his First Amended Complaint (Doc. 8) on December 17, 2013.

An amended complaint supersedes and replaces the original complaint.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004) (citing *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).  Accordingly, three of the original Defendants (Sgt. Campbell, Sgt. Johnson, and Chaplain Williams) have been terminated from this case because the First Amended Complaint did not name them as parties or include any allegations against them.

**The Amended Complaint**

Plaintiff presents a single claim in his amended pleading.  On October 10, 2012, Plaintiff arrived at Shawnee after a routine transfer (Doc. 8, p. 2).  Upon his arrival, he was ordered inside the prison and was subjected to a strip search along with "a line of other inmates." *Id*.  Plaintiff was naked, and was ordered to bend over, spread his buttocks, and lift his genitals for inspection.  During this search, female nurses and staff were "walking around and looking at" the searches, as were other male officers.  *Id*.

As Defendants, Plaintiff names IDOC Director Godinez, Shawnee Warden Martin, and Shawnee Officer Reed, who held the rank of "strip search officer" (Doc. 8, p. 2). However, he does not indicate in the body of his complaint whether or how any of these Defendants were involved in the October 10, 2012, search which gave rise to his claim.

Plaintiff asserts that "strip searches are not to be conducted in front of the 'opposite gender' or around anyone else but the inmate and the officer conducting the strip search." *Id*.  In support of that proposition, he cites 725 Illinois Compiled Statutes 5/103-1(d)(e), and (h).  Further, he argues that the search violated his rights to be free from unreasonable

searches and seizures and from cruel and unusual punishment, under the Fourth and Eighth Amendments.

He seeks declaratory relief, an injunction to stop illegal strip searches of inmates, and compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.   After fully considering the allegations in Plaintiff's amended complaint, the Court concludes that this action is subject to summary dismissal.

Strip searches of prisoners that are not related to legitimate security needs, or conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment.  *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment); *see also Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).

Plaintiff's factual allegations, however, fail to suggest that the October 10 strip search was conducted in such a manner as to violate his constitutional rights.  He does not claim that the search involved any harassing, humiliating, or demeaning comments or behavior on the part of any prison staff.  Nor does it appear that the search was performed with the intent to

degrade him, or that it was unnecessary in light of legitimate security concerns. Indeed, Plaintiff states that the search was conducted immediately after he arrived at Shawnee from another correctional institution. The Court presumes that prison officials will have a legitimate security need to search inmates who are newly transferred into their custody, to prevent the introduction of contraband into the facility, and/or to protect the safety of prison staff and other inmates. Still, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays*, 719 F.3d at 634 (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)).

Plaintiff's primary objection to the strip search is that it was performed in the view of prison staff, including female employees, who were not involved in conducting the actual search (Doc. 8, p. 2). However, neither this fact nor the fact that Plaintiff and other inmates were strip-searched in view of each other amounts to a constitutional violation, when no other circumstances were present to indicate that the search was intended to humiliate, harass, or demean the inmates.

Convicted prisoners do not have the same privacy rights as they did when they were free. They are subject to observation by prison staff at any time, even when they are in various states of undress. *See Hudson v. Palmer*, 468 U.S. 517, 525-30 (1984) (inmates do not have an expectation of privacy in their cells, either to be free from searches or from observation by prison staff); *see also Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) ("[P]rivacy is the thing most surely extinguished by a judgment committing someone to prison"). The Seventh Circuit has held that female guards can monitor male inmates who are in the shower or on the toilet, even if this includes observing them while they are naked. *Johnson*, 69 F.3d at 146. In light of this authority, the mere fact that the strip search was observed by other male and female

prison employees did not violate Plaintiff's constitutional rights.

Furthermore, searching prisoners in a group is not unconstitutional in and of itself. "[A] prisoner's expectation of privacy is extremely limited in light of the overriding need to maintain institutional order and security." *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987) (citing *Bell v. Wolfish,* 441 U.S. 520, 537 (1979)). "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). The strip search complained of in *Mays v. Springborn* involved allegations that the plaintiff had been subjected to daily strip searches in view of other inmates in a "freezing" basement room, by guards who wore dirty latex gloves and who made demeaning comments to the prisoners. *See Mays*, 719 F.3d 631, 634 (7th Cir. 2013); *Mays*, 575 F.3d 643, 649 (7th Cir. 2009). In contrast to that case, Plaintiff herein does not describe any circumstances suggesting that Defendants intended to humiliate him or the other inmates by searching them as a group on a single occasion. Under the facts of this case, Plaintiff was not subjected to cruel and unusual punishment, nor did the strip search violate the Fourth Amendment.

Finally, Plaintiff's reliance on an Illinois statute regulating certain strip searches (725 Ill. Comp. Stat. 5/103-1) is misplaced. Even if this statute had been violated by the Defendants, it would not give rise to a constitutional claim upon which relief may be granted. As a general proposition, "[t]he federal government is not the enforcer of state law." *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *see also Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989). Further, the Seventh Circuit has specifically held that Illinois' enactment of this strip-search

statute did not create a federally protected liberty interest.  *Kraushaar v. Flanigan*, 45 F.3d 1040, 1047 (7th Cir. 1995).  Therefore, even a purported violation of the statute cannot be pursued as a federal claim.  *Id*. at 1047-49.

Notably, this statute by its terms does not apply to Plaintiff's situation, which was that of a convicted felon being moved from one institution to another within the state correctional system.  Section 5/103-1 is entitled "Rights on Arrest."  It prohibits strip searches of persons who are arrested for "a traffic, regulatory or misdemeanor offense," unless certain circumstances are present.  725 ILL. COMP. STAT. 5/103-1(c).  The statute further provides that if an arrested person is strip searched, the search must be performed by a person of the same sex, where it cannot be observed by others.  725 ILL. COMP. STAT. 5/103-1(e).  However, none of the provisions in subsections (c) through (h) (which includes the sections cited by Plaintiff) apply if the person is in custody pursuant to a court order.  725 ILL. COMP. STAT. 5/103-1(j).  This exception puts Plaintiff, who was imprisoned as a result of a court judgment finding him guilty of a felony offense, outside any of the protections contained in Section 5/103-1.

For these reasons, Plaintiff fails to state a constitutional claim on which relief may be granted.  This action shall be dismissed with prejudice.

## Pending Motions

Plaintiff's motion for leave to proceed in forma pauperis ("IFP") (Doc. 3) shall be addressed in a separate order, following the receipt of the necessary inmate trust fund account records.

Because this case shall be dismissed, the motion for recruitment of counsel (Doc. 4) is **DENIED AS MOOT.**

**Disposition**

      This action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

      Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable notwithstanding the dismissal of the case.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

      If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

      The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

      **IT IS SO ORDERED.**

      **DATED:  December 26, 2013**

                    *s/ Michael J. Reagan*
                    United States District Judge